UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASKARAN SINGH,<br><br>            Petitioner,<br><br>    v.<br><br>WARDEN OF THE GOLDEN STATE ANNEX DETENTION FACILITY et al.,<br><br>            Respondents. | No. 1:25-cv-01693-DAD-JDP<br><br>ORDER GRANTING IN PART PETITIONER'S *EX PARTE* MOTION FOR A TEMPORARY RESTRAINING ORDER AND GRANTING PETITIONER'S MOTION TO PROCEED PSEUDONYMOUSLY<br><br>(Doc. Nos 11, 12.) |

       This matter is before the court on petitioner's motion for a temporary restraining order and motion to proceed by way of pseudonym. (Doc. Nos. 11, 12.) For the reasons explained below, the court will grant in part petitioner's motion for temporary restraining order and grant petitioner's motion to proceed pseudonymously.

       On December 13, 2025, petitioner filed a first amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging his detention by United States Immigration and Customs Enforcement ("ICE"). (Doc. No. 10.) In the petition, he asserts the following two claims: (1) violation of procedural due process under the Fifth Amendment; and (2) violation of substantive due process under the Fifth Amendment. (*Id.* at ¶¶ 61–71.) In support of the motion for a temporary restraining order, petitioner presents evidence of the following.

1

1      Petitioner is a 21-year-old male citizen and national of India who fled his home country to
2   avoid persecution for his ethnicity and political beliefs.  11-2 at ¶¶ 2, 5.)  He entered the U.S. at
3   the San Ysidro border on December 15, 2023.  (*Id.* at ¶¶ 2.)  Upon arrival, he presented himself to
4   U.S. officials to apply for asylum.  (*Id.*)  Petitioner was detained for one day, then released on
5   parole pursuant to 8 C.F.R. § 212.5[1] with a GPS monitoring bracelet and placed into an Intensive
6   Supervision Program ("ISAP").  (*Id.*; Doc. No. 10 at ¶ 14.)  After his release from immigration
7   custody, petitioner established a life in Stockton, California where he complied with all of the
8   conditions of his ISAP, obtained work authorization and became gainfully employed, and applied
9   for asylum.  (Doc. No. 11 at ¶ 3.)  Petitioner has no criminal history.  (*Id.*)  On October 15, 2025,
10  petitioner traveled to the Stockton ICE office to change his address when ICE officials re-arrested
11  him and transported him to the Golden Gate Annex Detention Facility.  (Doc. No. 11-2 at ¶ 4.)
12  Prior to his re-arrest, petitioner received no notice of alleged non-compliance with the conditions
13  of his parole or ISAP.  (*Id.*)  Petitioner was scheduled to appear for a master calendar hearing
14  before an Immigration Judge ("IJ") on December 16, 2025.  (Doc. No. 11-4 at 2.)

15      On December 13, 2025, petitioner filed the pending motion for a temporary restraining
16  order.  (Doc. No. 11.)  In the motion, petitioner seeks the following forms of relief from this
17  court:  (1) an order directing respondents to immediately release him from custody pending
18  further proceedings, enjoining respondents from re-detaining him absent further order of this
19  court, and waiving any bond or electronic monitoring requirement as a condition of release; or (2)
20  alternatively, an order requiring respondents to immediately release him from custody and to

---

[1] Petitioner asserts that he was paroled pursuant to § 212.5 without providing any supporting documentation as to that allegation.  Respondents appear to concede this point in their opposition.  (*See* Doc. Nos. 18 at 2) ("Petitioner asserts that he was detained upon entry into the United States and then released as part of the Intensive Supervision Appearance Program, presumably pursuant to 8 C.F.R. § 212.5.").  Accordingly, the court will rely upon this undisputed fact in resolving the pending motion and construes the facts to indicate that petitioner was originally released from custody on parole pursuant to 8 U.S.C. § 1182.  *S-M-J v. Bostock*, No. 6:25-cv-01425-MTK, 2025 WL 3137296, at *1 n.2 (D. Or. Nov. 10, 2025) ("The Court cites to non-evidentiary documents (the Petitions and briefing) only for facts that—based on the parties' respective filings and statements at oral argument—are undisputed."); *Chavarria v. Chestnut*, No. 1:25-cv-01755-DAD-AC, 2025 WL 3533606, at *3 (E.D. Cal. Dec. 9, 2025) (describing how release on parole pursuant to § 1182 "necessarily" requires a finding that the parolee was neither a security nor flight risk under 8 C.F.R. § 212.5).

schedule a pre-deprivation hearing before an immigration court where respondents would bear the burden of demonstrating that petitioner presents a flight risk or danger to the community justifying his re-detention within 14 days of the issuance of this order.[2]  (Doc. No. 11-5 at 2.)

## LEGAL STANDARD

### A.  Motion for Temporary Restraining Order

The standard governing the issuing of a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).  "The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *see also Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1172 (9th Cir. 2011) ("After *Winter*, 'plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction.'"); *Am. Trucking Ass'n, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009).  A plaintiff seeking a preliminary injunction must make a showing on all four of these prongs. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  The Ninth Circuit has also held that "[a] preliminary injunction is appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Id.* at 1134–35 (citation omitted).  The party seeking the injunction bears the burden of proving these elements. *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009); *see also Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (citation omitted) ("A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief.").

---

[2]  Petitioner also asks the court to enjoin respondents from transferring petitioner out of the Eastern District of California or deporting him pending these proceedings. (Doc. No. 11-5 at 2.) Because the court orders petitioner's immediate release, this request will be denied as moot.

1  Finally, an injunction is "an extraordinary remedy that may only be awarded upon a clear
2  showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.
3        The likelihood of success on the merits is the most important *Winter* factor.  *See Disney*
4  *Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017).  Plaintiff bears the burden of
5  demonstrating that he is likely to succeed on the merits of his claims or, at the very least, that
6  "serious questions going to the merits were raised." *All. for Wild Rockies*, 632 F.3d at 1131.
7  **B.      Motion to Proceed Under Pseudonym**
8        "[M]any federal courts, including the Ninth Circuit, have permitted parties to proceed
9  anonymously when special circumstances justify secrecy." *Does I thru XXIII v. Advanced Textile*
10 *Corp.*, 214 F.3d 1058, 1067 (9th Cir. 2000).  "In this circuit, . . . parties [may] use pseudonyms in
11 the 'unusual case' when nondisclosure of the party's identity 'is necessary . . . to protect a person
12 from harassment, injury, ridicule or personal embarrassment.'"  *Id.* at 1067–68 (quoting *United*
13 *States v. Doe*, 655 F.2d 920, 922 n.1 (9th Cir. 1981)).  "[A] district court must balance the need
14 for anonymity against the general presumption that parties' identities are public information and
15 the risk of unfairness to the opposing party." *Id.* at 1068.
16       The Ninth Circuit has identified three situations in which parties have been allowed to
17 proceed under pseudonyms:  "(1) when identification creates a risk of retaliatory physical or
18 mental harm; (2) when anonymity is necessary to preserve privacy in a matter of sensitive and
19 highly personal nature; and (3) when the anonymous party is compelled to admit [his or her]
20 intention to engage in illegal conduct, thereby risking criminal prosecution . . . ." *Id.* (citations
21 and internal quotation marks omitted).  A party requesting to proceed pseudonymously has the
22 burden of showing that their "need for anonymity outweighs prejudice to the opposing party and
23 the public's interest in knowing the party's identity." *Id.* at 1068–69.  "When a party requests
24 Doe status, the factors to be balanced against the general presumption that parties' identities are
25 public information, are:  (1) the severity of the threatened harm; (2) the reasonableness of the
26 anonymous party's fears; and (3) the anonymous party's vulnerability to such retaliation." *Doe v.*
27 *Ayers*, 789 F.3d 944, 945 (9th Cir. 2015) (internal quotation marks, brackets, and ellipses
28 omitted).

4

**DISCUSSION**

**A.      Motion for Temporary Restraining Order**

        1.          <u>Likelihood of Success on the Merits</u>

                a.          *Procedural Due Process Claim*

Petitioner contends that he will succeed on the merits of his procedural due process claim because the government improperly revoked his release on parole without first holding a pre-deprivation hearing at which the government demonstrated by clear and convincing evidence that there was a material change in circumstances warranting his re-detention. (Doc. No. 11 at 13.) Petitioner further contends that application of the three-factor test under *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) demands his immediate release from custody and that the government must provide him with "notice and a hearing before a neutral adjudicator before any re-arrest or revocation of his custody release." (*Id.* at 17–22.) In opposition, respondents contend that petitioner is not entitled to a pre-deprivation hearing and was properly re-arrested because he is an applicant for admission who is subject to mandatory detention under § 1225(b)(2)(A). (Doc. No. 18 at 8–10.) Respondents do not meaningfully address petitioner's arguments regarding application of the *Mathews* test.

As outlined above, it appears to be undisputed that petitioner was released on parole pursuant to § 1182. The undersigned has previously addressed the due process that the government must provide before re-detaining immigration detainees who were previously released on parole. *See Chavaria*, 2025 WL 3533606, at *3–5 (reasoning that an immigration detainee who was originally released on parole and then re-detained under substantially similar circumstances to the present case had a significant liberty interest at stake and concluding that application of the *Mathews* test supported a finding that the petitioner was entitled to immediate release from immigration detention.). Other district courts in the Ninth Circuit have adopted this reasoning. *See e.g.*, *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1031–36 (N.D. Cal. 2025); *Roso Fajardo v. Robbins*, No. 1:25-cv-1842-JDP, 2025 WL 3677635, at *3–5 (E.D. Cal. Dec. 18, 2025). Accordingly, the court concludes that petitioner has a protected liberty interest in his continued release and incorporates the *Mathews v. Eldridge* analysis set forth in *Chavaria* in

5

1   concluding that here all of the *Mathews* factors weigh in favor of petitioner.  *See* 2025 WL

2   3533606, at *4–5.  Therefore, the court concludes that petitioner has satisfied the first *Winter*

3   factor.

4           2.       <u>Irreparable Harm, Balance of Equities, and Public Interest</u>

5         As to the remaining *Winter* factors, the parties raise arguments that are substantially

6   similar to those which the court has previously addressed.  *See N.D.N. v. Bondi*, No. 1:25-cv-

7   01587-DAD-CKD, 2025 WL 3251102, at *7 (E.D. Cal. Nov. 21, 2025).  The court incorporates

8   by reference the analysis set forth in *N.D.N.* and finds that consideration of the remaining *Winter*

9   factors also weighs in favor of granting petitioners' motion for a temporary restraining order.

10  Accordingly, the court concludes that consideration of all of the *Winter* factors weigh in favor of

11  granting petitioner's motion for temporary restraining order.  Therefore, the court need not

12  address petitioner's substantive due process claim.  *All. For Wild Rockies*, 632 F.3d at 1139

13  (declining to address remaining claims after finding that the plaintiff established that there were

14  serious questions going to the merits of one claim).

15          3.       <u>Remedy</u>

16        Petitioner asks the court to order his immediate release from custody while enjoining

17  respondents from re-detaining him absent further order of the court, and to waive any bond or

18  electronic monitoring condition of his release.  (Doc. No. 11-5 at 2.)  Alternatively, petitioner

19  seeks his immediate release from custody and to be provided a bond hearing within 14 days at

20  which respondents demonstrate by clear and convincing evidence that petitioner presents a flight

21  risk or danger to the community.  (*Id.*)  The court addressed a nearly identical request for relief in

22  *Gholami v. Chestnut*, No. 1:25-cv-01644-DAD-DMC (HC), 2025 WL 3640675, at *3 (E.D. Cal.

23  Dec. 16, 2025), and concluded that due process required the petitioner's release from custody

24  under the same conditions to which they were subjected immediately prior to their re-detention.

25  Accordingly, the court incorporates the reasoning set forth in *Gholami* and rejects petitioner's

26  request for an order enjoining respondents from subjecting him to electronic monitoring.

27  /////

28  /////

6

1	Accordingly, the court concludes that the appropriate remedy is directing respondents to
2	immediately release petitioner under the same conditions of parole that he was subjected to
3	immediately before he was re-detained.

4	**B.	Motion to Proceed Pseudonymously**

5	Petitioner also moves to proceed by way of pseudonym. (Doc. No. 12.) He argues that
6	the court should grant the motion because: he has a pending asylum claim based on ethnic and
7	political persecution he faced in India, the case may require disclosure of health information,
8	petitioner will disclose his identity to respondents thereby eliminating any prejudice that they
9	would suffer, and the public has an interest in anonymity here because the government is the
10	respondent. (*Id.* at 2–4.)

11	"The normal presumption in litigation is that parties must use their real names." *Doe v.*
12	*Kamehameha Schs./Bernice Pauahi Bishop Est.*, 596 F.3d 1036, 1042 (9th Cir. 2010). However,
13	the court may "conceal[] parties' identities in order to protect them from retaliation by third
14	parties and also to protect nonparties from reprisals." *Does I thru XXIII v. Advanced Textile*, 214
15	F.3d 1058, 1067 (9th Cir. 2000). "[A] party may preserve his or her anonymity in judicial
16	proceedings in special circumstances when the party's need for anonymity outweighs prejudice to
17	the opposing party and the public's interest in knowing the party's identity." *Id.* at 1068. Where
18	"pseudonyms are used to shield the anonymous party from retaliation, the district court should
19	determine need for anonymity by evaluating the following factors: (1) the severity of the
20	threatened harm; (2) the reasonableness of the anonymous party's fears; and (3) the anonymous
21	party's vulnerability to such retaliation." *Id.* (citations omitted).

22	Here, petitioner has applied for asylum because of the political and religious persecution
23	that he faced in his home country. As other district courts have recognized, a petitioner with an
24	asylum application pending might still be repatriated to his home country and be subjected to
25	retaliatory action if his application were to be denied. *Doe v. Becerra*, 787 F. Supp. 3d 1083,
26	1095 (E.D. Cal. 2025) ("Given Petitioner is still at risk of removal should his asylum application
27	be denied, he is also acutely vulnerable to retaliation."). Moreover, respondents will suffer no
28	prejudice because they do not oppose the pending motion and petitioner "will promptly provide"

1    respondents with petitioner's identity when respondents' "counsel appears in this case[.]"  (Doc.
2    No. 12 at 3); *E.A.P.C. v. Wofford*, No. 1:25-cv-01546-JLT-CDB, 2025 WL 3551935, at *2 (E.D.
3    Cal. Dec. 11, 2025) ("As Respondents do not oppose Petitioner's request to proceed
4    pseudonymously and do not identify any actual, threatened, or risk of material prejudice that
5    could result from Petitioner's use of a pseudonym, and given Petitioner provides in his request
6    that he does not seek to withhold his identity from Respondents, the Court finds that Respondents
7    would not suffer any prejudice if Petitioner were allowed to proceed under pseudonym.").
8    Finally, the need to proceed pseudonymously in this case outweighs any other competing
9    interests.  *Id.* at *2 ("While the Court is mindful of the public's interest in knowing the identity of
10   the parties, after reviewing the record and considering the nature of the potential harm to which
11   Petitioner may be exposed, the reasonableness of Petitioner's fears relating to the sensitive nature
12   of private mental and physical health information at issue, and any potential prejudice to
13   Respondents as well as the public's interest in this action, the Court finds that, at this early stage
14   of the litigation, the Petitioner's need for anonymity outweighs the competing interests.").

15        Accordingly, the court concludes that all of the relevant factors weigh in favor of granting
16   the motion.  Petitioner's motion to proceed pseudonymously will therefore be granted.

17   **CONCLUSION**

18        For the reasons set forth above,
19        1.     Petitioner's motion for a temporary restraining order (Doc. No. 11) is GRANTED
20             in part as follows:
21             a.     Respondents are ORDERED to immediately releases petitioner from
22                  respondents' custody under the same conditions to which he was subject
23                  immediately prior to his re-detention on October 15, 2025;
24             b.     Respondents are ENJOINED and RESTRAINED from re-detaining
25                  petitioner for any purpose, absent exigent circumstances, without providing
26                  petitioner with notice and a pre-detention hearing before a neutral
27                  adjudicator;
28   /////

        c.      Petitioner's motion for a temporary restraining order enjoining respondents from transferring petitioner out of the Eastern District of California or deporting him pending these proceedings is DENIED without prejudice to a renewed motion for a temporary restraining order should such issues become ripe for review

2. Petitioner's motion to proceed pseudonymously (Doc. No. 12), is GRANTED;

3. Under the circumstances of this case, petitioner will not be required to post bond pursuant to Rule 65(c) of the Federal Rules of Civil Procedure; and

4. The parties are directed to meet and confer and, if possible, submit a joint proposed briefing schedule and hearing date with respect to any motion for a preliminary injunction no later than fourteen (14) days from the date of entry of this order.

IT IS SO ORDERED.

Dated: **December 22, 2025**

DALE A. DROZD
UNITED STATES DISTRICT JUDGE

9